**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-02436-RM

JOSE PAUL BENCOMO PEREZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Plaintiff Jose Paul Bencomo Perez's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

    Defendant provided the Court with the administrative record. (ECF Nos. 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 13; 16; 17.)

    For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB and SSI applications and remands for further proceedings consistent with this Order.

**I.     BACKGROUND**

In April 2009, Plaintiff applied for DIB and SSI alleging he was disabled as of January 22, 2009 (Tr. 238-47), due to the following conditions that limit his ability to work: "spinal injury – severe pain in lower back and tailbone, long history of shoulder problems, mood disorder" (Tr. 317). After Plaintiff's applications were initially denied (Tr. 154-159), Plaintiff requested a hearing before an ALJ (Tr. 160) which occurred in March 2011 (Tr. 45-79). In 2011, the ALJ denied Plaintiff's applications. (Tr. 126-150.) Plaintiff requested review of the ALJ's decision and, in 2012, the Appeals Council remanded the matter to the ALJ for further consideration. (Tr. 151-153.) Subsequently, in February 2013, Plaintiff had another hearing before the ALJ. (Tr. 80-97.) In March 2013, the ALJ issued the at-issue decision. (Tr. 14-44.) Plaintiff requested review of the ALJ's decision, and in July 2014, the Appeals Council denied such review. (Tr. 1-13.) Plaintiff timely requested judicial review before the Court.

**A.     Background and Relevant Medical Evidence**

Plaintiff was born in 1977. (Tr. 240.) Plaintiff completed high school and attended Job Corps. (Tr. 323.) There is conflicting evidence as to whether Plaintiff attended special education classes. (Tr. 49, 323, 370, 451.) Plaintiff reported his past work[1] as a dishwasher[2], general laborer[3], harvest-laborer, and painter[4]. (Tr. 318.)

---

[1] At the first hearing, the vocational expert testified that Plaintiff has past work also including store clerk, retail with a skilled vocational preparation ("SVP") of 4 and also as a busboy with a SVP of 2. (Tr. 65.)

[2] At the second hearing, the vocational expert testified that Plaintiff's work as a dishwasher is classified as a "kitchen helper with an SVP of 2. . . ." (Tr. 94.) At the first hearing, the vocational expert testified that Plaintiff is a dishwasher/prep cook with SVP of 2. (Tr. 65.)

[3] At the second hearing, the vocational expert testified that Plaintiff's work as a general laborer is classified as a "material handler with an SVP of 3. . . ." (Tr. 94.) At the first hearing, the vocational expert testified that Plaintiff was a general laborer or loader with SVP of 3. (Tr. 65.)

[4] The parties dispute whether Plaintiff's work as a painter is part of his Job Corps training or whether he was actually employed. Specifically, at the first oral hearing in this matter, the vocational expert testified that he would "leave it up to [the ALJ] [as to] what [the ALJ is] going to count as SGA because I do not believe the Job Corps as

2

Plaintiff claims he became disabled on January 22, 2009 due to a combination of physical and mental health impairments. (Tr. 244, 317.) At the second hearing in this matter, Plaintiff's counsel raised an issue as to whether Plaintiff's mental impairments include an intellectual disability. (Tr. 96.)

Plaintiff has an extensive medical history. Neither party disputes that Plaintiff has not always been compliant with his providers' recommendations or their prescribed medical treatments.

In October 2008, physician assistant ("PA") Eric Frevert diagnosed Plaintiff with bipolar disorder and prescribed Plaintiff medication. (Tr. 442.) Additionally, Frevert diagnosed Plaintiff with right shoulder tendonitis. (Tr. 442.)

In April 2009, PA David Daboll diagnosed Plaintiff with back pain. (Tr. 433.) James Hubbard, M.D., diagnosed Plaintiff with mild loss of lumbar lordosis. (Tr. 418.)

In June 2009, PA Frevert examined Plaintiff and stated that he was not totally disabled and recommended vocational rehabilitation. (Tr. 422.)

In July 2009, Alan Ketelhohn, M.D., a state-agency physician, reviewed the medical record and concluded that Plaintiff could lift 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit six hours in an eight-hour workday. (Tr. 107-08, 120-21.) In addition, Plaintiff could push and/or pull without limitation, and had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 107-08, 120-21.)

---

he described it was SGA because he was just provided housing for the painting . . ." (Tr. 65.) At the second hearing, the vocational expert testified Plaintiff has a work history as a "painter with an SVP of 7." (Tr. 95.)

In July 2009, Richard Madsen, Ph.D., conducted a psychological consultative examination. (Tr. 448-52.) Dr. Madsen diagnosed Plaintiff with bipolar disorder, posttraumatic stress disorder, developmental learning disorder, impaired intellectual functioning, and personality disorder. (Tr. 451.) Dr. Madsen opined that Plaintiff's ability to do work-related activities is at the marked level because Plaintiff has "difficulty maintaining a regular work schedule, focusing and concentrating on work, relating to peers, coworkers, supervisors, and the general public." (Tr. 451.)

In July 2009, Alberta Ziomek, M.D., a state-agency psychiatrist, reviewed the medical record and completed a Psychiatric Review Technique Form. (Tr. 104-05.) Dr. Ziomek found that Plaintiff had moderate restrictions in the activities of daily living, social functioning, and in maintaining concentration, persistence, or pace. (Tr. 104-05, 117-18.) Dr. Ziomek found Plaintiff had no extended episodes of decompensation. (Tr. 104-05, 117-18.) Dr. Ziomek opined that Plaintiff is capable of performing simple, repetitive work activity without close contact with the public and co-workers. (Tr. 103, 116.)

In June 2010, Frevert completed a Med-9 form[5], in which he opined that Plaintiff was disabled for six months due to bipolar disorder, chronic back pain, and shoulder pain. (Tr. 460.)

In February 2011, Nicole Tolle, LPC, determined that Plaintiff had an organic mental disorder, psychotic disorder, affective disorder, anxiety disorder, somatoform disorder, personality disorder, and a substance addiction disorder. (Tr. 490-502.) Tolle opined that Plaintiff had marked restrictions in daily living activities; extreme difficulties in social functioning; and extreme difficulties in maintaining concentration, persistence or pace. (Tr. 500,

---

[5] A Med-9 form is used by the Colorado Department of Human Services to determine eligibility for state programs. *See Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012).

503.) Tolle also opined that Plaintiff had four or more extended episodes of decompensation. (Tr. 500.) Tolle determined that Plaintiff had "marked" limitations in understanding and memory, moderate and marked limitations in sustained concentration and persistence, marked limitations in social interaction, and marked limitations in adaptation. (Tr. 503-05.) Tolle opined that Plaintiff had no capacity to perform work-related mental activities on a sustained basis. (*See* Tr. 506.)

In March 2012, Plaintiff sought mental health counseling. (Tr. 597.) Plaintiff received mental health counseling, skills training, and medication management from approximately April 2012 through January 2013. (Tr. 587-97.)

In June 2012, PA Michael Noonan completed a Med-9 form opining that Plaintiff was "totally and permanently disabled" due to bipolar disorder, depression, and chronic back pain. (Tr. 536.)

### B. The ALJ's Decision

On March 4, 2013, ALJ William Musseman issued his decision in this matter denying Plaintiff DIB and SSI. (Tr. 14-39.) In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 19-39.) ALJ Musseman found that Plaintiff has met the disability insured status of the Act and has not engaged in substantial activity since January 22, 2009, the alleged onset date. (Tr. 20.) ALJ Musseman found that Plaintiff has the following severe impairments: chronic right shoulder pain, with history of rotator cuff repair; and mood/anxiety disorder. (Tr. 20-23.) ALJ Musseman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations,

specifically considering Listings 12.04 and 12.06. (Tr. 23-26.) ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows: "to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can perform no over chest level work or work involving dealing with the general public." (Tr. 26-37.) ALJ Musseman found that Plaintiff has past relevant work and that he is unable to perform such work. (Tr. 37-38.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Musseman's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Musseman found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including: food service worker and marker. (Tr. 38-39.)

Therefore, ALJ Musseman concluded that Plaintiff was not disabled. (Tr. 39.)

### C. Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 7-13.) On July 31, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARDS[6]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.

---

[6] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

*Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B.     Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of

disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability. *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii).

Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step.  Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

## III.    ANALYSIS

Plaintiff raises numerous issues for the Court's consideration, including that:  (1) the ALJ failed to develop the record with respect to Plaintiff's IQ[7] (ECF No. 13 at 16-21); (2) the ALJ failed to develop the record with respect to an updated medical opinion (ECF No. 13 at 21-22); (3) the ALJ's RFC determination lacks substantial evidence in that the ALJ incorrectly rejected certain medical opinions (ECF No. 13 at 22-30); and (4) the ALJ's credibility determination lacks substantial evidence (ECF No. 13 at 30-33).

---

[7] A subset of this argument is that the ALJ failed to address Plaintiff's applications under Listing 12.05C.  (ECF No. 13 at 18.)

Because the Court finds the ALJ committed legal error due to his failure to analyze Plaintiff's applications under Listing 12.05C and more specifically, that the ALJ failed to order a consultative examination to ascertain Plaintiff's IQ, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by the opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider all of the evidence and the issues anew.

### A. The ALJ Committed Reversible Error by Failing to Analyze Plaintiff's Claim that He Met Listing 12.05C

An ALJ is required "to discuss the evidence and explain why he found that [a claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1997) (alternation in original). In this matter, the ALJ specifically found that Plaintiff's "mental impairments do not meet or medically equal the criteria of listing 12.04 or 12.06." (Tr. 23.) The ALJ does not discuss whether, as Plaintiff's counsel raised at hearing (Tr. 96), Plaintiff's impairments meet or medically equals the criteria of listing 12.05C. (*See generally* Tr. 23-26.) An ALJ is not required to "exhaust every possible line of inquiry in an attempt to pursue every

potential line of questioning. The standard is one of reasonable good judgment." *Wall*, 561 F.3d at 1062 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).

> Listing 12.05 provides as follows:
>
> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in . . . C . . . are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

In this matter, Plaintiff presented the ALJ with his IQ scores from before the age of 22. (Tr. 372-73.) Plaintiff had a verbal IQ of 66, performance IQ of 69, and full scale IQ of 65 at age 10. (Tr. 372.) Approximately three years earlier, Plaintiff had had the same testing (WISC-R) conducted. (Tr. 373.) The earlier testing did not report an IQ score, but the raw and scaled test scores were similar to the later scores.[8] The ALJ determined Plaintiff had other physical and mental impairments ("chronic right shoulder pain, with history of rotator cuff repair; and mood/anxiety disorder" (Tr. 20-23)) which imposed significant work-related limitations ("to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can perform no over chest level work or work involving dealing with the general public" (Tr. 26-37)).

---

[8] The scores at age 7 were as follows: Raw Scores- verbal 64; performance 88; full scale 74. (Tr. 373.) Scaled scores- verbal 24; performance 42; full scale 66. (Tr. 373.) At age 10, the scores were as follows: Raw Scores- verbal 50; performance 77; full scale not reported. (Tr. 372.) Scaled scores- verbal 22; performance 26; full scale 48. To the extent that scores correlate with IQ, Plaintiff's IQ would have dropped over time.

Thus, the ALJ failed to exercise "reasonable good judgment" by not analyzing whether Plaintiff met Listing 12.05C. *See Wall*, 561 F.3d at 1062; *see also Clifton*, 79 F.3d at 1009.

Further, Plaintiff argues the ALJ erred by not developing the administrative record by ordering a consultative examination to ascertain Plaintiff's current IQ. (ECF No. 13 at 16-21). "In a social security disability case, the claimant bears the burden to prove [his] disability." *Wall*, 561 F.3d at 1062 (quoting *Flaherty*, 515 F.3d at 1071). An ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *Id*. at 1062-63 (internal quotation and citation omitted). An ALJ's duty to develop the record, however, is not unqualified. *Id*. at 1063. The ALJ may "reasonably rely on 'counsel to identify the issue or issues requiring further development.'" *Id*. at 1063 (citation omitted). "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id*. (citation omitted).

In this matter, Plaintiff's counsel identified that Plaintiff may meet Listing 12.05. (Tr. 96.) Specifically, in the record, Plaintiff had an IQ score in the 60s prior to his reaching age 22 and impaired intellectual functioning in adulthood. (Tr. 372, 451.) And because the ALJ found that Plaintiff had other physical and mental impairments which imposed additional and significant work-related limitations on his functioning (Tr. 20-23, 26-37), the ALJ then had a duty to develop the record further to ascertain whether Plaintiff's IQ remains in the 60s. *See Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014).

Defendant argues that the "ALJ considered Plaintiff's educational records, which included the low IQ scores, and reasonably gave no weight to this evidence because other more recent evidence in the record indicated that Plaintiff had a greater intellectual capacity." (ECF

No. 16 at 10.) The Court agrees that the ALJ considered Plaintiff's educational records. (Tr. 34.) But the Court is unable to ascertain whether the ALJ considered Plaintiff's IQ scores. Nothing in the record addresses Plaintiff's IQ scores in relation to Listing 12.05. Listing 12.05C assumes many mildly intellectually disabled individuals will be able to work. But that is why a disability under Listing 12.05C requires another severe impairment in addition to the intellectual disability. *Lott*, 772 F.3d at 551. While it is proper for the ALJ to consider other evidence in the record to determine whether Plaintiff's IQ scores were valid, this case is distinguishable from *Lax* because in *Lax* the ALJ did so in relation to whether the claimant's intellectual disability met or equaled a listing. *Lax*, 489 F.3d at 1086-88. Further, in *Lax*, the ALJ relied upon medical providers' questioning the validity of Lax's IQ scores. *Lax*, 489 F.3d 1086-88. In contrast, in this matter, the ALJ did not find that Plaintiff submitted invalid IQ scores; rather, the ALJ found Plaintiff's "cognitive ability" adequate and the IQ scores simply "dated." (Tr. 34.) The ALJ cannot substitute his medical opinion for that of a medical source. *Lax*, 489 F.3d at 1089; *Winfrey*, 92 F.3d at 1021-22. "An ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003) (citation omitted).

Further, there is not substantial evidence in the record supporting the ALJ's reasoning for giving no weight to Plaintiff's IQ scores. Evidence of the ability to perform semi-skilled work and perform other tasks indicating intellect is an appropriate consideration to determine whether a claimant has an intellectual disability. *See Bland v. Astrue*, 432 F. App'x 719, 823 (10th Cir. 2011) (unpublished). In this matter, the ALJ relied upon Plaintiff's work history and daily activities to determine that Plaintiff did not have an intellectual disability. (Tr. 34.) With respect

to Plaintiff's work history, the second vocational expert testified that Plaintiff worked as painter[9] while employed by Job Corps (Tr. 281, 351). (Tr. 95.) Plaintiff argues that this was not substantial gainful activity as defined by 20 C.F.R. §§ 404.1510, 404.1572. (ECF No. 17 at 6.) The Court finds merit to Plaintiff's argument as the ALJ had an obligation to develop the issue as to whether Plaintiff was receiving a subsidy or whether this was actual substantial gainful employment. POMS DI 10505.025(A)(1)(b), "Special Employment Programs", available at https://secure.ssa.gov/poms.nsf/lnx/0410505025 (last visited Dec. 3, 2015). The Court does not take issue with the ALJ's finding that Plaintiff completed work of a semi-skilled nature as a material handler[10]. (Tr. 34.) But the ALJ then relies upon Plaintiff's activities of driving and working on cars to find that Plaintiff has adequate cognitive abilities. (Tr. 34.) First, the reference to working on cars has no other context. (Tr. 309.) The ALJ simply assumes this "requires . . . specialized knowledge of a how an engine works." (Tr. 26.) But the ALJ provides no evidence that Plaintiff worked on car's engines, or knew anything about engines. Certainly his prior experience as a "painter" does not equate to one with knowledge of engines.. Second, the reference to driving is not necessarily indicative of an IQ score above 70. *See Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1157 (D. Kan. 2007).

## IV. CONCLUSION

Based on the foregoing, the Court:

(1) VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

---

[9] The record reflects that the work performed by Plaintiff as a "painter" may actually only have consisted of sanding and removing of unspecified parts of cars for painting. (Tr. 351, 354.) In any event, there is no evidence in the record that Plaintiff ever worked competitively in a painter capacity outside of his Job Corps program.
[10] Despite the SVP rating, the actual work performed by Plaintiff amounted to loading, unloading, and stacking bags of potatoes.

(2)     REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 9th day of December, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge